UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CONSTANCE MULLER                                CIVIL ACTION

VERSUS                                          NO. 20-1059

BONEFISH GRILL, LLC, ET AL.                     SECTION "R" (3)


## ORDER AND REASONS

Before the Court are defendant Bonefish Grill's motion for summary judgment,[1] and appeal of Magistrate Judge Douglas's order compelling discovery.[2] Plaintiff Constance Muller opposes both motions.[3] For the following reasons, the Court grants defendant's appeal of the magistrate judge's order, and reverses the magistrate's order compelling defendant's production of additional documents. Furthermore, because there is no genuine dispute of material fact as to defendant's liability, the Court grants defendant's motion for summary judgment.

---

[1] R. Doc. 22.
[2] R. Doc. 61 (seeking review of Magistrate Judge Douglas's order compelling production of documents (R. Doc. 60)).
[3] R. Docs. 32, 56, 66.

I. **BACKGROUND**

This case arises from a slip-and-fall that occurred at defendant Bonefish Grill's restaurant in Metairie, Louisiana. At her deposition, plaintiff Connie Muller testified that, on April 29, 2019, she slipped on the floor and fell,[4] injuring multiple parts of her body and tearing cartilage in her right wrist.[5] On March 30, 2020, plaintiff filed suit against Bonefish Grill and its parent company, Bloomin' Brands, alleging that defendants' negligence caused her injuries.[6]

Defendant Bonefish Grill moved for summary judgment, arguing that plaintiff cannot meet her burden to show that a hazardous condition existed on the floor, nor that defendant had actual or constructive notice of the condition.[7] Plaintiff argues that a genuine issue of material fact remains in dispute as to both elements.[8] While defendant's motion was pending, Magistrate Judge Dana Douglas ordered defendant to produce certain documents.[9] Defendant appeals the magistrate judge's order.[10] The Court considers the parties' arguments below.

---

[4] R. Doc. 22-6 at 23-24.
[5] *Id.* at 44-48.
[6] R. Doc. 1 ¶¶ 9-11.
[7] R. Doc. 22-1 at 1.
[8] R. Doc. 32 at 2.
[9] R. Doc. 60.
[10] R. Doc. 61.

## II. REVIEW OF THE MAGISTRATE JUDGE'S ORDER

On April 13, 2021, Magistrate Judge Douglas ordered defendant to produce two pages of a document containing company notes and communications about plaintiff's case (the "Claims Sheet").[11] After reviewing the contested pages *in camera*, the magistrate rejected defendant's assertion of work-product privilege as to the first page,[12] and rejected its assertion of attorney-client privilege as to the second.[13] Defendant now asks the Court to review and reverse the magistrate judge's order.[14] It argues that the magistrate's privilege rulings were contrary to law, and that the documents should not be produced.[15]

On timely objection by a party, a district judge may reverse a magistrate judge's order on a nondispositive pretrial motion if it finds that the order is clearly erroneous or contrary to law. Fed. R. Civ. P. 72(a); *Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995). This discretion to review covers discovery orders, such as privilege rulings. *Id.*

---

[11] R. Doc. 60.
[12] *Id.* at 4.
[13] *Id.* at 5.
[14] R. Doc. 61.
[15] R. Doc. 61-1.

Defendant first objects to the magistrate judge's finding that page one of the Claims Sheet is not covered by the work-product privilege.[16] The work-product privilege protects from discovery "documents . . . prepared in anticipation of litigation or for trial by or for another party or its representative." Fed. R. Civ. P. 26(b)(3)(A); *see also Adams v. Mem'l Hermann*, 973 F.3d 343, 349-50 (5th Cir. 2020). To determine whether a document was prepared "in anticipation of litigation," the Fifth Circuit applies the "primary purpose" test. The test provides that the work-product privilege "can apply where litigation is not imminent, 'as long as the *primary motivating purpose* behind the creation of the document was to aid in possible future litigation.'" *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (emphasis added) (quoting *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982)). Materials assembled in the ordinary course of business are typically excluded from the work-product privilege. *El Paso*, 682 F.2d at 542. "If the document would have been created regardless of whether litigation was also expected to ensue, the document is deemed to be created in the ordinary course of business and not in anticipation of litigation." *Fitch v. Entergy Corp.*, No. 17-1548, 2019 WL 1490105, at *4 (E.D. La. Feb. 11, 2019) (citation omitted). The burden to establish that a

---

16   *Id.* at 3-6.

document is work product falls on the party asserting the privilege. *Hodges, Grant & Kaufmann v. Dep't of the Treasury*, 768 F.2d 719, 721 (5th Cir. 1985).

A court may nonetheless order the production of material that is privileged as work product if the party seeking production "shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii). "[T]he burden of showing that . . . materials that constitute work product should nonetheless be disclosed is on the party who seeks their production." *Hodges*, 768 F.2d at 721.

Here, the Court finds that page one of the Claims Sheet was prepared in anticipation of litigation. The Court's *in camera* review of the document reveals that it was created on January 29, 2020, two days after the date of plaintiff's litigation demand letter. The date stamp at the top of the page is consistent with defendant's representation that the page was "snapshotted" and saved in a claims file after defendant received plaintiff's letter.[17] Furthermore, multiple notes on the page indicate that plaintiff is represented by counsel. The page also contains administrative and financial information—including a line item for legal expenses—regarding the status

---

[17] *Id.* at 5.

of plaintiff's claim. The Court finds that the document would not have been created if litigation were not expected to ensue. *See Fitch*, 2019 WL 1490105, at *4. Accordingly, the Court finds that the "primary motivating purpose" for its creation was to aid in future litigation. *In re Kaiser*, 214 F.3d at 593. Therefore, page one falls within the protections of Rule 26(b)(3) and is protected by the work-product privilege.

Plaintiff argues that, even if the Court finds that the page qualifies as work product, the page should nonetheless be produced.[18] The Court's *in camera* review of page one reveals that plaintiff has no substantial need for the page, nor is it unable to obtain its substantial equivalent. *See* Fed. R. Civ. P. 26(b)(3)(A)(ii). The document contains only a brief note about the substance of plaintiff's claims, and the substance is duplicative of material elsewhere in the record. Accordingly, plaintiff has not met her burden to illustrate that production despite the privilege is warranted. Plaintiff is therefore not entitled to have page one produced. The Court reverses Magistrate Judge Douglas's Order as to page one.

Defendant also objects to the magistrate judge's finding that page two of the Claims Sheet is not covered by the attorney-client privilege.[19] The

---

[18] R. Doc. 66 at 5.
[19] R. Doc. 61-1 at 6-9.

attorney-client privilege protects "communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 720 (5th Cir. 2011) (citing *Hodges*, 768 F.2d at 720). When considering communications between a client and its in-house counsel, the court must "determine the purpose behind both the seeking of the assistance from in-house counsel and the responsive services that were rendered by in-house counsel." *In re Vioxx Prod. Liab. Litig.*, 501 F. Supp. 2d 789, 797 (E.D. La. 2007). The privilege protects only communications seeking legal assistance, not communications about "business, technical, scientific, public relations, [or] advertising issues." *Id*. The burden to demonstrate that the privilege applies falls on the party invoking the privilege. *King*, 645 F.3d at 720-21.

Here, page two of the Claims Sheet contains emails to and from defendant's in-house counsel regarding plaintiff's demand letter. The purpose of the email was evidently to obtain in-house counsel's legal services. The communications pertain exclusively to plaintiff's case, and nothing on the page otherwise suggests that the emails served a business, advertising, or other non-legal purpose. Accordingly, the Court finds that the document is protected by the attorney-client privilege.

Plaintiff argues that the document is not privileged because it was simply forwarded to in-house counsel and did not seek legal services.[20] This argument lacks merit. The attorney-client privilege does not require that communications themselves contain substantive legal advice, nor that they request advice affirmatively. Instead, it requires that the communications be made "*for the purpose of* obtaining legal advice." *Id.* at 720 (emphasis added). It is difficult to imagine a purpose for defendant's emails other than legal advice regarding plaintiff's demand letter. Page two of the Claims Sheet is therefore protected by the attorney-client privilege and is not discoverable. The Court reverses Magistrate Judge Douglas's Order as to page two of the Claims Sheet.

Because the Court finds that pages one and two of the Claims Sheet are privileged and therefore not discoverable, the Court does not consider either page in deciding on defendant's summary judgment motion. Nonetheless, the Court notes that it has reviewed the contested pages *in camera*, and the pages do not create an issue of material fact where an issue does not otherwise exist. Simply put, produced or not, the two pages would not change the Court's decision on defendant's motion for summary judgment.

---

[20] R. Doc. 66 at 7.

## III. SUMMARY JUDGMENT

### A. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam). "When assessing whether a dispute to any material fact exists, [the Court] consider[s] all of the evidence in the record but refrain[s] from making credibility determinations or weighing the evidence." *Delta & Pine Land Co. v. Nationwide Agribusiness Ins.*, 530 F.3d 395, 398-99 (5th Cir. 2008). All reasonable inferences are drawn in favor of the nonmoving party, but "unsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985) (quoting 10A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2738 (2d ed. 1983)); *see also Little*, 37 F.3d at 1075. "No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *EEOC v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014).

If the dispositive issue is one on which the moving party will bear the burden of proof at trial, the moving party "must come forward with evidence which would 'entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1264-65 (5th Cir. 1991) (quoting *Golden Rule Ins. v. Lease*, 755 F. Supp. 948, 951 (D. Colo. 1991)). "[T]he nonmoving party can defeat the motion" by either countering with evidence sufficient to demonstrate the "existence of a genuine dispute of material fact," or by "showing that the moving party's evidence is so sheer that it may not persuade the reasonable fact-finder to return a verdict in favor of the moving party." *Id.* at 1265.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by pointing out that the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim. *See Celotex*, 477 U.S. at 325. The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists. *See id.* at 324. The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue for resolution. *See, e.g., id.*; *Little*, 37 F.3d at 1075 ("Rule 56 'mandates the entry of summary judgment, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" (quoting *Celotex*, 477 U.S. at 322)).

### B. DISCUSSION

Defendant asserts that plaintiff is unable to meet her burden to prove (1) that a hazardous condition existed on the floor at the time of her fall, nor (2) that defendant had actual or constructive notice of the condition. Louisiana statutory law governs the "[b]urden of proof in claims against merchants" when a plaintiff alleges that the merchant's negligence caused the plaintiff to be injured in a fall on the merchant's premises. *See* La. Rev. Stat. § 9:2800.6. Under the statute, a plaintiff must prove the existence of a hazardous condition. *See Encalade v. Schwegmann Giant Supermarkets, Inc.*, 662 So. 2d 140, 143 (La. App. 4 Cir. 1995) (holding that plaintiff failed to carry her burden under § 9:2800.6 because "no evidence was presented to establish the existence of a foreign substance or hazardous condition"). Further, a plaintiff must prove that "[t]he merchant either" (1) "created" or (2) "had actual or constructive notice of the condition which caused the damage, prior to the occurrence." La. Rev. Stat. § 9:2800.6(B)(2); *Deshotel v. Wal-Mart Louisiana, L.L.C.*, 850 F.3d 742, 748 (5th Cir. 2017)

11

("[P]laintiffs must prove *either* creation of the hazard *or* actual or constructive notice thereof." (emphasis in original)).

The Fifth Circuit has observed that the "statute 'places a heavy burden of proof on plaintiffs' in slip and fall cases." *Bagley v. Albertsons, Inc.*, 492 F.3d 328, 330 (5th Cir. 2007) (quoting *Jones v. Brookshire Grocery Co.*, 847 So. 2d 43, 48 (La. App. 2 Cir. 2003)). A plaintiff cannot meet this burden through mere speculation. *See Bearb v. Wal-Mart*, 534 F. App'x 264, 265 (2013) (affirming grant of summary judgment where plaintiff "offer[s] only speculation . . . [that] Wal-Mart created the condition because it resulted from either a leaking skylight or wet shopping carts"); *Bagley*, 492 F.3d at 330 ("Mere speculation or suggestion is not sufficient to [show constructive notice] . . . ." (quoting *Allen v. Wal-Mart Stores, Inc.*, 850 So. 2d 895, 898-99 (La. App. 2 Cir. 2003))).

Defendant first argues that plaintiff has not introduced evidence sufficient to prove that a hazardous condition existed on the floor at the time of her fall. While plaintiff testified that she did not herself feel a liquid or other substance on the ground after falling,[21] her companion, Ken Prieur, testified that, "when [plaintiff] fell, [he] noted a smear of something [that]

---

[21] R. Doc. 22-6 at 26-27.

appeared to be liquid."[22] He further testified that he saw "12[ to] 14 inches of visible smear" at the site of plaintiff's fall.[23] Plaintiff also introduced contemporaneous notes from Prieur's cell phone, observing that he saw a "small amount of dripped water on [the] floor."[24] Moreover, an incident report produced by defendant states that plaintiff "slipped on water on the floor and fell."[25] Based on these items in the record, the Court finds that there is a genuine issue of fact as to whether there was a hazardous substance on the floor of defendant's premises. Therefore, summary judgment as to the existence of a hazardous condition is not warranted.

Next, the Court considers whether plaintiff has shown that defendant either created the hazardous condition, or had actual or constructive notice of the condition. *See Deshotel*, 850 F.3d at 748. Here, plaintiff has introduced no evidence that defendant created the condition, nor that it had actual notice of the condition. Thus, the Court considers whether plaintiff has introduced evidence to show that defendant had constructive notice that the liquid was on the floor.

---

[22] R. Doc. 22-7 at 19.
[23] *Id.* at 48.
[24] R. Doc. 32-4 at 23.
[25] R. Doc. 32-3 at 57.

13

A plaintiff demonstrates constructive notice when "the claimant has proven that the condition existed for such a period of time that it would have been discovered if the merchant had exercised reasonable care." La. Rev. Stat. § 9:2800.6(C)(1). Importantly, "[t]he statute does not allow for the inference of constructive notice," absent some showing of the existence of the condition prior to plaintiff's fall. *See White v. Wal-Mart Stores, Inc.*, 699 So. 2d 1081, 1084 (La. 1997); *see also Leger v. Wal-Mart La., LLC*, 343 F. App'x 953, 954 (5th Cir. 2009) (holding that the plaintiff must make a "positive showing of the existence of the condition" for some time period "prior to the fall"). "'Mere speculation or suggestion' is not sufficient to [show constructive notice]." *Bagley*, 492 F.3d at 330 (quoting *Allen*, 850 So. 2d at 898-99). "[C]ourts will not infer constructive notice . . .where the plaintiff's allegations are 'no more likely than any other potential scenario.'" *Id.* (quoting *Allen*, 850 So. 2d at 898-99).

Here, plaintiff is unable to prove that defendant had constructive notice because she has introduced no evidence that the liquid was on the floor for any period of time before her fall. Plaintiff testified that she did not see anything on the floor before her fall.[26] Ken Prieur, plaintiff's companion,

---

[26] R. Doc. 22-6 at 24.

14

also testified that he saw nothing on the floor before her fall.[27] Emory Perry, the hostess who walked ahead of plaintiff before her fall, testified that she did not see any spill on the floor.[28] Plaintiff introduces no surveillance footage nor testimony from other diners or staff suggesting that a substance was on the floor for some amount of time before plaintiff fell. Without such a showing, plaintiff is unable to prove that defendant had constructive notice of the hazardous condition. *See White*, 699 So. 2d at 1084; *Leger* 343 F. App'x at 954.

Plaintiff's other arguments as to constructive notice are without merit. For example, she argues that she has satisfied the temporal requirement of her claim based on defendant's practice of checking the floor for spills at every half-hour mark.[29] Defendant's records state that plaintiff fell around 1:20 p.m.,[30] indicating that that the previous spill check likely took place at 1:00 p.m.[31] Plaintiff contends, therefore, that if defendant's staff checked for spills at 1:00 p.m.,[32] the liquid must have ended up on the floor for some

---

[27] R. Doc. 22-7 at 19, 21, 32.
[28] R. Doc. 22-10 at 26-27, 39.
[29] R. Doc. 32 at 13-14; R. Doc. 56 at 3; *see also* R. Doc. 56-7 at 8.
[30] R. Doc. 32-3 at 57; R. Doc. 56-7 at 6.
[31] *See* R. Doc. 56 at 3; R. Doc. 56-7 at 9.
[32] Plaintiff points to no evidence that defendant's staff did not check for spills at 1:00 p.m.

15

period of time between 1:00 p.m. and 1:20 p.m.[33] These circumstances do not remedy plaintiff's failure to prove that the substance existed for some period of time before her fall. The thirty-minute practice suggests only that the liquid was *not* on the floor at or before 1:00 p.m. It suggests nothing as to when, after 1:00 p.m., the liquid appeared. It is the latter issue that plaintiff must address to carry her burden on the temporal element. Accordingly, plaintiff's argument does not raise an issue of material fact.

Plaintiff also argues that she can show constructive notice without proving the temporal element of her claim. Citing the Louisiana statute's definition of "constructive notice," and arguing for a "strict reading" of the statute,[34] plaintiff contends that there were "employee[s] in the vicinity" who, "in the exercise of reasonable care should have known of the condition."[35] La. Rev. Stat. § 9:2800.6(C)(1). Specifically, she contends that the hostess, Emory Perry, should have known about the liquid if she had fulfilled her duty to ensure that the walkway was clear of spills or other substances.[36] But plaintiff cites no authority suggesting that the statute's

---

[33] *See* R. Doc. 32 at 13-14; R. Doc. 56 at 3.
[34] R. Doc. 32 at 12.
[35] *Id.*
[36] *Id.* at 12-13; *see also* R. Doc. 22-10 at 13-15 (Perry's testimony as to her responsibility to clean up spills); R. Doc. 32-3 at 46-47 (managing partner Michael Baltrukevich's corporate testimony as to a hostess's duty to ensure that walkways are clear of spills and other safety issues).

definition of "constructive notice" obviates the temporal requirement for proving constructive notice. Indeed, both the Fifth Circuit and the Louisiana Supreme Court have made clear that the temporal element is necessary for a plaintiff to establish merchant liability under the statute. *See White*, 699 So. 2d at 1084; *see Leger* 343 F. App'x at 954 (requiring some "positive showing of the existence of the condition" for some period of time before the fall). Accordingly, plaintiff's argument lacks merit.

Thus, because "the evidence in the record is insufficient with respect to an essential element of the nonmoving party's claim," *Celotex*, 477 U.S. at 325, the Court grants defendant's motion for summary judgment.

## IV. CONCLUSION

Accordingly, the Court GRANTS defendant's motion to review the magistrate judge's order, and REVERSES the order compelling production. The Court also GRANTS defendant's motion for summary judgment. Plaintiff's complaint is DISMISSED.

New Orleans, Louisiana, this __7th__ day of July, 2021.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE